

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA **FILED**

MARY ROMA JAGE, individually and as mother and )     MAY 0 9 2006
next friend of Vilia T. Jage, and MICHAEL P. JAGE, )

Phil Lombardi, Clerk
U.S. DISTRICT COURT

                          Plaintiffs, )

versus                                 )    No.

TRUST COMPANY OF OKLAHOMA; THOMAS W. )
WILKINS, individually and as President, Chief Executive    **06CV   249 TCK- SA**
Officer, and Chairman of the Board of Trust Company of )
Oklahoma; RONALD J. SAFFA, individually and as a )
shareholder in Morrel, West, Saffa, Craige & Hicks, Inc.; )
MORREL, WEST, SAFFA, CRAIGE & HICKS, INC.; )
JAMES C. MILTON, individually and as a partner in )
Doerner, Saunders, Daniel & Anderson, L.L.P.; )
DOERNER, SAUNDERS, DANIEL & ANDERSON, )
L.L.P.; JAMES E. POE, individually and as a partner in )
Covington & Poe; COVINGTON & POE; LEE I. )
LEVINSON; TERRY J. BARKER, individually and as )
a partner in Pezold, Caruso, Barker & Woltz; PEZOLD, )
CARUSO, BARKER & WOLTZ; WILLIAM C. )
KELLOUGH, individually and as a partner in Boone, )
Smith, Davis, Hurst & Dickman and a shareholder in )
Boone, Smith, Davis, Hurst & Dickman, Inc.; BOONE, )
SMITH, DAVIS, HURST & DICKMAN; BOONE, )
SMITH, DAVIS, HURST & DICKMAN, INC.; BANK )
ONE, N.A.; J.P. MORGAN CHASE & CO.; JAMES E. )
WEGER, individually and as a partner in Jones, Givens )
Gotcher & Bogan and Jones, Gotcher & Bogan; JONES, )
GIVENS, GOTCHER & BOGAN; JONES, GOTCHER )
& BOGAN; PATRICIA WALLACE HASTINGS; and )
JOHN DOES 1-10, whose identities are not yet known; )
                                  )
                  Defendants. )

## COMPLAINT

Mary Roma Jage, individually and as mother and next friend of Vilia T. Jage, and

Michael P. Jage, for their claims for relief against defendants aver:

## SUBJECT MATTER JURISDICTION

1. Plaintiffs Mary Roma Jage and Michael P. Jage are citizens of the State of Illinois. Mary Roma Jage is the second of four children of Lorice T. Wallace and Frank A. Wallace, deceased, and a beneficiary of trusts created by her parents during their lifetime [collectively "the Wallace trusts"]. Michael P. Jage and Vilia T. Jage are children of Mary Roma Jage, grandchildren of Lorice T. and Frank A. Wallace, and contingent beneficiaries of the Wallace trusts. Michael is a beneficiary of a trust created by his grandmother; Vilia is a minor.

2. Defendant Trust Company of Oklahoma ["TCO"] is and was, at all times relevant to this action, a corporation organized under the laws of the State of Oklahoma having its principal place of business in the State of Oklahoma.

3. Defendant Thomas W. Wilkins ["Wilkins"] is a citizen of the State of Oklahoma and is and was, at all times relevant to this action, the President, Chief Executive Officer and/or Chairman of the Board of The Trust Company of Oklahoma.

4. Defendant Ronald J. Saffa ["Saffa"] is a citizen of the State of Oklahoma and is and was, at all times relevant to this action, an attorney admitted to practice law in Oklahoma and a shareholder in Morrel, West, Saffa, Craige & Hicks, Inc.

5. Defendant Morrel, West, Saffa, Craige & Hicks, Inc. ["Morrel, West"] is and was, at all times relevant to this action, a corporation organized under the laws of the State of Oklahoma having its principal place of business in the State of Oklahoma.

6. Defendant James C. Milton ["Milton"] is a citizen of the State of Oklahoma and is and was, at all times relevant to this action, an attorney admitted to practice law in Oklahoma and a partner in Doerner, Saunders, Daniel & Anderson, L.L.P.

2

7. Defendant Doerner, Saunders, Daniel & Anderson, L.L.P., ["Doerner Saunders"] is and was, at all times relevant to this action, a law firm doing business in Tulsa, Oklahoma, as a general partnership. Its members are citizens of the State of Oklahoma or States other than Illinois.

8. Defendant James E. Poe ["Poe"] is a citizen of the State of Oklahoma and is and was, at all times relevant to this action, an attorney admitted to practice law in Oklahoma and a partner in Covington & Poe.

9. Defendant Covington & Poe ["Covington & Poe"] is and was, at all times relevant to this action, a law firm doing business in Tulsa, Oklahoma, as a general partnership. Its members are citizens of the State of Oklahoma or States other than Illinois.

10. Defendant Lee I. Levinson ["Levinson"] is a citizen of the State of Oklahoma and is and was, at all times relevant to this action, an attorney admitted to practice law in Oklahoma.

11. Defendant Terry J. Barker ["Barker"] is a citizen of the State of Oklahoma and is and was, at all times relevant to this action, an attorney admitted to practice law in Oklahoma and a partner in Pezold, Caruso, Barker & Woltz.

12. Defendant Pezold, Caruso, Barker & Woltz ["Pezold Caruso"] is and was, at all times relevant to this action, a law firm doing business in Tulsa, Oklahoma, as a general partnership. Its partners are citizens of the State of Oklahoma or citizens of States other than Illinois.

13. Defendant William C. Kellough ["Kellough"] is a citizen of the State of Oklahoma and is and was, at all times relevant to this action, an attorney admitted to practice law

3

in Oklahoma, and is a former partner in Boone, Smith, Davis, Hurst & Dickman and a shareholder in Boone, Smith, Davis, Hurst & Dickman, Inc.

14. Defendant Boone, Smith, Davis, Hurst & Dickman was a law firm doing business in Tulsa, Oklahoma, as a general partnership until it was succeeded by Defendant Boone, Smith, Davis, Hurst & Dickman, Inc. [collectively "Boone Smith"], a corporation organized under the laws of the State of Oklahoma having its principal place of business in Oklahoma.

15. Defendant Bank One, N.A. ["Bank One"] is and was, at all times relevant to this action, a corporation organized under the laws of a State other than Illinois having its principal place of business in a State other than Illinois. Discovery is likely to establish that Bank One merged with or was acquired by J.P. Morgan Chase & Co. ["Chase"] in 2005.

16. Defendant James E. Weger ["Weger"] is a citizen of the State of Oklahoma and is and was, at all times relevant to this action, an attorney admitted to practice law in Oklahoma, and is a former partner in Jones, Givens, Gotcher & Bogan, and a partner in Jones, Gotcher & Bogan.

17. Defendant Jones, Givens, Gotcher & Bogan was a law firm doing business in Tulsa, Oklahoma, as a general partnership, until it was succeeded by Jones, Gotcher & Bogan [collectively "Jones Gotcher"]. Jones Gotcher's partners are citizens of the State of Oklahoma or citizens of States other than Illinois.

18. Defendant Patricia Wallace Hastings ["Hastings"] is a citizen of the State of Oklahoma and a daughter of Lorice T. and Frank A. Wallace.

19. Defendants John Doe 1-10, whose identities are not yet known, are citizens of the State of Oklahoma or States other than Illinois.

4

20. The matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars ($75,000.00).

## OPERATIVE FACTS

21. Saffa is the nephew of Lorice T. Wallace and acted as her tax attorney at various times relevant to this action.

22. The Frank A. Wallace Trust was created in 1974, by trustor Frank A. Wallace and subsequently amended five times before Mr. Wallace died in 1990. A copy of the Frank A. Wallace Trust, with annexed amendments, is attached hereto as "Exhibit 1." The Frank A. Wallace Trust, as amended, became irrevocable upon the trustor's death.

23. The Lorice T. Wallace Revocable Trust was created in 1974, by trustor Lorice T. Wallace and named her as "trustee."

24. Terms of the trust agreements established by Mrs. Wallace and her late husband, Frank A. Wallace, provided that upon his death and/or her resignation, First National Bank (later known as Bank One, N.A. and now J.P. Morgan Chase & Co.) and the Wallace's son, Stephen P. Wallace, would become co-trustees.

25. In 1993, following Mr. Wallace's death, Saffa restated The Lorice T. Wallace Revocable Trust ["LTW Revocable Trust"] and inserted himself and TCO as successor co-trustees. He advised Mrs. Wallace to sign the Restatement of Trust, with its provision naming him as a successor co-trustee without advising her to seek the independent advice of a second attorney. A copy of the Restatement of the LTW Revocable Trust is attached hereto as "Exhibit 2-A." Amendment Number One to the restated LTW Revocable Trust was drafted by Saffa and signed by Mrs. Wallace on February 12, 1998. This amendment, a copy

5

of which is attached hereto as "Exhibit 2-B," added two new provisions to the 1993 restatement and amended one existing provision.

26. A year earlier, Mrs. Wallace signed the instrument creating The Lorice T. Wallace Irrevocable Trust, aka The Lorice T. Wallace Life Insurance Trust ["LTW Life Insurance Trust"]. This instrument, a copy of which is attached hereto as "Exhibit 3," named TCO as sole trustee.

27. Although an irrevocable trust had already been formalized, Saffa prepared a new trust indenture creating the Lorice T. Wallace Irrevocable Trust ["LTW Irrevocable Trust"] for Mrs. Wallace's signature in 1996. This instrument, a copy of which is attached hereto as "Exhibit 4," inserted Saffa and TCO as co-trustees.

28. February 8, 1996, the same day Mrs. Wallace signed the instrument creating the LTW Irrevocable Trust, she also signed another instrument Saffa prepared, while acting as her tax advisor and attorney in relation to various family trusts, i.e., the Lorice T. Wallace Family, Limited Partnership Agreement.

29. On May 19, 1998, Paul H. Mindeman, President of TCO, sent Mrs. Wallace a letter, a copy of which is attached hereto as "Exhibit 5," which identified conditions she would have to approve in order for TCO to accept appointment as successor co-trustee of the LTW Revocable and the LTW Irrevocable Trusts. What purport to be signatures of Lorice T. Wallace and the date "6-2-98" appear at the bottom of the second page of Mr. Minde-man's letter. One of these conditions, like one provision in Amendment Number One to the LTW Revocable Trust, contains terms which purport to immunize TCO and Saffa from liability for breach of trust and, therefore, are unenforceable as against "public policy."

6

30. Saffa never advised beneficiaries of Mrs. Wallace's revocable and irrevocable trusts, including plaintiff Mary Roma Jage, of the changes made by various amendments to those trusts.

31. It was never Mrs. Wallace's intent or desire to change the terms of any of her trusts or create new trusts; she only did so in reliance on recommendations Saffa made while acting in a fiduciary capacity and his misrepresentations concerning adverse tax consequences if she did not follow his advice.

32. It was never Mrs. Wallace's intent or desire that Saffa be inserted as a successor co-trustee of any of her trusts. Saffa was only able to succeed in this respect because of the fiduciary position he occupied as Mrs. Wallace's tax attorney, Mrs. Wallace's reliance on her nephew's self-serving proposals and recommendations, and Saffa's playing on the fact that he was not simply a tax lawyer, but her nephew.

33. It was never Mrs. Wallace's intent or desire that TCO be inserted as a successor co-trustee of any of her trusts. In agreeing to this, Mrs. Wallace relied upon advice she was given by Saffa, acting in his fiduciary capacity as her tax attorney, as well as her nephew.

34. Mrs. Wallace resigned as trustee of the LTW Revocable Trust under duress on or about November 3, 1999, on the advice of Dr. Carol Hanson while being subjected to pressure and undue influence by Saffa and Hastings, the third of the Wallaces' children.

35. On December 9, 1999, Mrs. Wallace executed a Durable Power of Attorney, a copy of which is attached hereto as "Exhibit 6." This instrument provided, among other things, that "[i]f protective proceedings for Principal's person or estate are commenced at any time after the date of this Power of Attorney, Principal hereby nominates Stephen P. Wallace

7

to be the guardian or conservator, as the case may be, of the person and the estate of Principal for the duration of such guardianship or conservatorship." Copies of this Durable Power of Attorney were mailed to TCO and Saffa.

36. On December 13, 1999, attorneys Poe and Levinson filed a Petition for Appointment of Guardian in *In the Matter of the Guardianship of Lorice T. Wallace* in the District Court in and for Tulsa County, No. PG-99-556. Saffa acknowledged that he and TCO were the driving force behind this special proceeding which asked the Court to appoint Hastings as general guardian of her mother, Lorice T. Wallace, on grounds that Mrs. Wallace was totally incapacitated. Although 30 Okla.Stat. § 3-102 provides that a nomination, such as that contained in Mrs. Wallace's Durable Power of Attorney, "shall be binding on any court having jurisdiction of said guardianship," no mention was made of that "nomination" in the Petition that attorneys Poe and Levinson filed in PJ-99-556 four days later.

37. After the guardianship proceeding was initiated, Mrs. Wallace, through her attorneys, Terry Barker and the Pezold Caruso firm, wrote Saffa and TCO and instructed them not to spend her money or trust money to pay for the attorneys who were purportedly appearing for Hastings and seeking rulings and judgments that were adverse to Mrs. Wallace's interests.

38. On March 15, 2000, Saffa responded that he and TCO would spend Mrs. Wallace's money in any way they wanted, despite Mrs. Wallace's wishes and directive.

39. On March 13, 2000, District Judge Robert Perugino, the judge presiding over the guardianship proceeding, stated from the bench that Mrs. Wallace "ha[d] not been determined to be incapacitated" and "ha[d] the right to make [her] own decisions." Later that day, Mrs. Wallace exercised the power reserved in her as the grantor of the trust and executed an amendment altering

8

the LTW Revocable Trust. The amendment removed Saffa and TCO as co-trustees of that trust and replaced them with Stephen P. Wallace, Mary Roma Wallace Jage, and Bank One as successor co-trustees.

40. On March 23, 2000, a second Pezold Caruso lawyer who represented Mrs. Wallace in PG-99-556, faxed copies of the Instrument Altering Trust to Saffa and Wilkins, who was then serving as President and Chief Executive Officer of TCO. Letters Mrs. Wallace's lawyers had faxed the previous afternoon (a) notified Saffa and TCO that they had been removed as co-trustees of the LTW Revocable Trust and (b) asked them to name Stephen Wallace, Mary Roma Jage, and Bank One as successor co-trustees of Mrs. Wallace's irrevocable trusts, transfer trust assets to Bank One, and then resign as trustees of the LTW irrevocable trusts.

41. On March 24, 2000, Poe signed and filed a pleading styled as *"Petition of the Trust Company of Oklahoma and Ronald J. Saffa, Trustees, for instructions and construction of Trust,"* Case No. PT-2000-21. In that pleading, an excerpt of which is attached hereto as "Exhibit 7," Poe and Levinson represented that they were acting as "Attorneys for Trustees." However, when Poe filed the Petition, he knew that Saffa alone, not Saffa and TCO acting jointly, had authorized him to initiate litigation to contest Saffa's removal as a successor co-trustee of the LTW Revocable Trust. The Petition Poe filed contains the false allegation that TCO and Saffa "are the duly designated and acting trustees of the Lorice T. Wallace Revocable Trust." Documents attached to that pleading as "Exhibits 'B' through 'F'" show that Mrs. Wallace had amended the LTW Revocable Trust and removed TCO and Saffa as co-trustees of that trust on March 13, 2000.

42. Saffa lacked standing under 60 Okla.Stat. § 175.23 to file PT-2000-21 on March 24, 2000 because he was not "a trustee," but a *former* trustee, of the LTW Revocable Trust on that date, having been "removed" by the grantor's amendment of the trust on March 13, 2000, and having been given notice of that fact in writing on March 23, 2000.

9

43. Mrs. Wallace challenged the *former* trustees' standing to file PT-2000-21 in a motion to dismiss which her attorney, Terry Barker, fi ed on April 6, 2000.

44. In his Response to Mrs. Wallace's challenge to the *former* co-trustees' standing to file PT-2000-21, Saffa, again acting independently rather than "jointly" with TCO, argued that the Instrument Altering Trust was not "automatically and instantly effective as a modification of the Trust."

45. Section 3.04 of the 1993 Restatement of the LTW Revocable Trust is the first of three trust provisions cited in Saffa's Response to the standing challenge presented by Mrs. Wallace's April 6, 2000 motion to dismiss. That section provides that "[a]fter the death of the Grantor, or in the event Grantor becomes incapacitated, mentally or physically, RONALD J. SAFFA and THE TRUST COMPANY OF OKLAHOMA shall serve as [successor] Trustees." Because Mrs. Wallace resigned as trustee of the LTW Revocable Trust five months earlier, its terms were inapplicable.

46. Section 9.07 of the 1993 Restatement of the LTW Revocable Trust is the second trust provision cited in Saffa's Response to Mrs. Wallace's April 6, 2000 motion to dismiss. Section 9.07 "incapacity"; however, its terms only pertain to the incapacity of an individual "trustee," not the grantor. Mrs. Wallace was not serving as a ":rustee" of the LTW Revocable Trust on March 13, 2000, March 24, 2000, or April 24, 2000. She was simply the grantor of that trust.

47. Section 4.02 of Amendment Number One of the LTW Revocable Trust is the third trust provision cited in Saffa's Response to the standing challenge presented by Mrs. Wallace's April 6, 2000 motion to dismiss. That section defines "the incapacity of Grantor," but only "[f]or the purposes" of that particular provision, which pertains to Mrs. Wallace's desire to remain in her home rather than being placed in a care facility should the need arise.

48. None of the trust provisions cited in Saffa's Response to Mrs. Wallace's motion to dismiss could have been construed in a way that would have authorized the judge presiding over PT-2000-21 to "reinstate" Saffa and TCO as co-trustees of the LTW Revocable Trust.

49. Even if TCO and Saffa had acted jointly in filing the Petition in PT-2000-21 on March 24, 2000, they would have lacked standing to invoke the district court's subject matter jurisdiction under 60 Okla.Stat. § 175.23, because they had been "removed" as co-trustees of the LTW Revocable Trust on March 13, 2000, and provided with copies of the Instrument Altering Trust on March 23, 2000.

50. The "standing" issue raised in Mrs. Wallace's April 6, 2000 motion to dismiss was never adjudicated; instead, the court declared that motion "moot" in an Order filed November 6, 2000.

51. The court acquired no subject matter jurisdiction over PT-2000-21 because Saffa lacked standing to commence that action acting independently from, rather than "jointly" with, TCO.

52. Because the court's subject matter jurisdiction had not been properly invoked, the Journal Entry of Final Judgment that was entered in PT-2000-21 in March 2002 is null and void.

53. Orders entered in PT-2002-56, a later-filed action involving Mrs. Wallace's trusts, are also void because that case is a subsequent proceeding based upon the void judgment in PT-2000-21.

54. Saffa acted alone, rather than "jointly" with TCO when he directed Poe to file the Petition in PT-2000-21 on March 24, 2000. When Saffa, as the lawyer who drafted the Restatement of the LTW Revocable Trust and a former successor co-trustee of that trust, took this action, he knew or should have known that he was violating the following express provisions of Section 7.08 of the LTW Revocable Trust on the pretext that the Court needed to construe other trust provisions:

**Division of Duties Between Co-Trustees.** While two or more Trustees are serving hereunder, the powers, duties, and authorities of the Trustees *shall be exercised by them jointly.* However, one or more of such Trustees may at any time by an instrument in writing delegate to the other Trustees all or less than all of the powers conferred upon that Trustee, either for a specified time or until the delegation is revoked by a similar instrument.

55. TCO did not authorize Poe and Levinson to file the original Petition or other papers those lawyers filed in PT-2000-21, purportedly on behalf of TCO, as well as Saffa. Milton, the only lawyer to specifically identify himself as TCO's attorney, never sought leave to be "substituted" for Poe and

11

Levinson, the lawyers who represented to the court, Mrs. Wallace, and contingent beneficiaries of her trusts that they were "Attorneys for Trustees" in papers filed on March 24, 2000 and April 24, 2000.

56. Saffa alone paid the attorneys fees for papers Poe and Levinson prepared and filed in PT-2000-21 on March 24, 2000, and April 24, 2000.

57. Saffa's act of filing the Petition in PT-2000-21 is a "nullity," under Oklahoma law and express terms of the restated LTW Revocable Trust which Saffa prepared, because TCO did not join Saffa in authorizing Poe and Levinson to file PT-2000-21. Acting alone, Saffa lacked standing to file that trust action.

58. Knowing, from the outset, that Saffa's filing PT-2000-21 was *"a nullity,"* under express terms of the trust instrument and Oklahoma law, TCO and Saffa engaged in conduct that amounts to "dishonesty in office" by actively concealing relevant facts that were within their personal knowledge, as well as the knowledge of their attorneys, but unknown to Mrs. Wallace, beneficiaries of her trusts, including plaintiff Mary Roma Jage, and lawyers who represented them on and after March 24, 2000.

59. To procure her signature on the agreed Order on Petition for Appointment of Guardian in PG-99-556, the guardianship proceeding, Saffa and Milton told plaintiff Mary Roma Jage that she would not be appointed limited guardian of the person of her mother, unless she signed a document which stated that any and all documents that her mother, Lorice T. Wallace, had signed between December 13, 1999 and May 9, 2000 that pertained to her trusts were "void."

60. Mary Roma Jage's signature on the Order on Petition for Appointment of Guardian which filed in PG-99-556 on May 9, 2000, was obtained by Saffa and Milton, acting as TCO's attorney, by fraud and breach of ethical duties imposed by Rule 4.3 of the Oklahoma Rules of Professional Conduct. Because she was unrepresented by counsel, plaintiff relied upon their representations.

61. In addition to perpetrating a fraud on Mary Roma Jage and her mother, Lorice T. Wallace, Saffa and Poe, with Milton's assistance, perpetrated a fraud on Judge Perugino when they secured his

signature on the Order on Petition for Appointment of Guardian in PG-99-556 without disclosing how

they had secured the signatures of Mary Rorna Jage and Terry Barker, Mrs. Wallace's attorney.

62. The Order Judge Perugino signed and entered in PG-99-556 on May 9, 2000, contains the

following terms which purport to render the Instrument Altering Trust void and of no effect, without

identifying the Instrument Altering Trust by name or disclosing the fact that it was executed on the

same day that Judge Perugino found that Mrs. Wallace "could make [her] own decisions":

[A]ny and all documents executed by Ms. Wallace on or after December 13, 1999 (the
date of the filing of the Petition herein) purporting to or asserted as affecting any kind
of transfer, conveyance, sale of or lien upon any portion of Ms. Wallace's assets, or
purported to or asserted as effecting any modification of Ms. Wallace's trust documents
be and the same are REVOKED, NULL and VOID in their entirety.

63. The only purpose to be served by the above-quoted findings in the fraudulently-procured

Order that was filed in the guardianship proceeding on May 9, 2000, was to "restore" Saffa and TCO

to their prior status as co-trustees of the LTW Revocable and Irrevocable Trusts.

64. The quoted finding encompasses the Instrument Altering Trust, which Mrs. Wallace signed

on March 13, 2000, and letters Mrs. Wallace's attorneys sent to TCO and Saffa on March 22, 2000 and

March 23, 2000, that informed them of their removal as co-trustees of the LTW Revocable Trust and

asked Saffa and TCO to resign as co-trustees of the LTW Irrevocable Trusts.

65. Saffa and TCO had no factual basis for challenging the validity of the Instrument Altering

Trust, which Mrs. Wallalce executed on March 13, 2000, since no judicial determination had been

made on or before that date that Mrs. Wallace lacked the legal capacity to make business decisions for

herself or execute legal documents.

66. An after-the-fact judicial determination that Mrs. Wallace lacked the mental capacity on

March 13, 2000, to remove and add co-trustees would have been "clearly erroneous" given Judge

Perugino's findings in PG-99-556 on March 13, 2000, that Mrs. Wallace had not been adjudicated to

be incapacitated and could make her own decisions, as well as contrary to controlling Oklahoma law.

13

67. Instead of litigating the issues of Mr. Wallace's alleged "incapacity" in PG-99-556 and their standing, as former co-trustees of the LTW Revocable Trust, to file the Petition in PT-2000-21, Saffa and TCO accomplished both ends by procuring the Order in PG-99-556 by *fraud.*

68. The Order filed in PG-99-556 on May 9, 2000, contains a finding that purports to nullify the Instrument Altering Trust which Mrs. Wallace executed on March 13, 2000. This fraudulently-procured finding was used to procure the Journal Entry of Final Judgment in PT-2000-21 on March 25, 2002, which declared that Saffa and TCO were trustees of all of Mrs. Wallace's trusts. The Journal Entry of Final Judgment also declared, in terms quoted below, that five documents attached to the Petition filed in PT-2000-21 are "null, void, and of no force or effect":

The documents and letters attached to the Original Petition as Exhibits "B" through "F" (identified at trial as Petitioners' Joint Exhibits 98, 100, 101, 102, and 103) fall within the language of paragraph 8 of the order entered on May 9, 2000, in *In re Lorice T. Wallace,* Case No. PG-99-556, in the District Court of Tulsa County, State of Oklahoma, and are therefore null, void, and of no force or effect.

69. Litigation that ensued from Saffa and TCO's refusal to honor the amended Trust instrument, their refusal to turn trust assets over to Bank One, their initiating the guardianship proceedings, their filing PT-2000-21 against Mrs. Wallace, and other conflict-of-interest breaches of trust led Mrs. Wallace to file a six-count Verified Petition against TCO and Saffa in the Tulsa Count District Court on April 5, 2000. This action was styled *Lorice T. Wallace, Plaintiff, v. The Trust Company of Oklahoma, an Oklahoma corporation, and Ronald J. Saffa, an individual,* No. CJ-2000-1684.

70. Mrs. Wallace, through her attorneys Barker and Pezold Caruso, also filed a writ proceeding in the Oklahoma Supreme Court on April 17, 2000, that challenged Judge Perugino's authority to take further action in PG-99-556, because he had not adjudicated the issue of her alleged incapacity within the 30 day period prescribed by statute.

71. On May 10, 2000, after urging the Oklahoma Supreme Court to issue a writ prohibiting Judge Perugino from taking further action in the guardianship proceeding because he had exceeded his

statutory authority, a Pezold Caruso attorney who purportedly was still representing Mrs. Wallace's
best interests, moved for "voluntary dismissal" of that original action. By way of explanation, counsel
told the Oklahoma Supreme Court that "the action pending in the district court has been resolved by
agreement between Wallace and the Real Party in Interest, and this agreement has been memorialized
by an agreed order entered by the district court on May 9, 2000."

72. A letter Barker wrote Milton on May 4, 2000, makes it clear that it was TCO's attorney,
not Hastings' lawyer who drafted the Order Judge Perugino signed on May 9, 2000. Other statements
in Barker's letter, e.g., his suggestion that Milton insert language in the agreed Order revoking all
previous Durable Powers of Attorney executed by Mrs. Wallace and authorizing TCO to pay Pezold
Caruso its legal fees for representing Mrs. Wallace in cases Saffa and TCO had filed *against* her,
together with subsequent communications to Milton about TCO's paying those fees, Barker's signing
a dismissal with prejudice of the six-count action that he had filed against TCO and Saffa on Mrs.
Wallace's behalf, but without Judge Perugino's express approval after he had signed the agreed order
in PG-99-556 making Mrs. Wallace the subject of a limited guardianship and voiding the Instrument
Altering Trust. Absent the probate court's approval of any proposed settlement of claims that had been
asserted on Mrs. Wallace's behalf, that dismissal is of no force or legal effect.

73. TCO paid other lawyers, e.g., Kellough of Boone Smith, to perform legal services pur-
portedly on behalf of Mary Roma Jage, who was appointed limited guardian of the person of Lorice
T. Wallace by the May 9, 2000 agreed Order entered in PG-99-556, and her mother initially and later
for Mrs. Jage alone. TCO continued this practice as long as the representation benefitted TCO. For
example, without Mrs. Jage's knowledge or consent, Kellough filed papers in three trust-related actions
which stated that she and Mrs. Wallace "stiputate[d] that Trust Company of Oklahoma and Ronald J.
Saffa as Co-Trustees may continue in their current incumbent positions and that no hearing is necessary
to presently adjudicate the sufficiency of their accounting or to grant them discharge herein."

15

74. In March 2003, the *res* of the Frank A. Wallace Revocable Trust, as well as the fiduciary

duties and obligations imposed on Bank One, N.A., as the corporate trustee, was transferred from the

Tulsa Branch of Bank One, N.A., to its Fort Worth, Texas, office.

75. On September 16, 2003, six months after the transfer and three months after Mrs. Wallace

died, Weger filed a Petition for Guidance and Construction of Trust in the Tulsa County District Court

in an action styled *In re: Franklin [sic] A. Wallace Revocable Trust dated December 26, 1974 and as

amended,* and numbered PT-2003-46. Bank One's Petition asked the court to grant the following relief

under Section 175.23 of Title 60 of the Oklahoma Statutes:

a. assess the present standards of living and care for Lisa Frances Wallace[, the youngest of the Wallace's children who has Downs syndrome,] and provide guidance to Bank One concerning the determination of the distribution of proceeds of the Franklin A. Wallace Trust for the care and maintenance of Lisa Frances Wallace, even though said distribution may reduce distributions to other beneficiaries;

b. determine how the proceeds from the Franklin [sic] A. Wallace Trust should be distributed and set aside for the benefit of Lisa Frances Wallace;

c. determine if the LISA Trust should be reformed and/or interpreted so that in the event of funding the LISA Trust by the Franklin A. Wallace Trust, all federal and state assistance and other related benefits for Lisa Frances Wallace will be maintained;

d. determine whether the current successor trustees of the LISA Trust [, Lisa's three siblings, Stephen P. Wallace, Mary Roma Wallace Jage, and Patricia Wallace Hastings,] are conflicted from serving as such, and, if so, determine a new successor trustee of the LISA Trust;

e. determine how, and to whom, any remaining funds, if any, from the Franklin [sic] A. Wallace Trust should be distributed; and

f. grant Bank One such other and further relief, both general and special, at law or in equity, to which Bank One may show itself to be entitled.

76. TCO, which identified itself as the "real party in interest" in papers it filed in PT-2003-46

months after that trust action was filed, stood to profit from the relief sought in Bank One's petition.

Bank One, on the other hand, used the litigation as a means of relieving itself of liability which it might

incur if it sought an Order allowing it to "resign" as corporate trustee of the Frank A. Wallace Trust.

Bank One, through its employees and/or its attorneys, including Weger, colluded with TCO and/or its attorneys, including Milton, to accomplish both ends.

77. TCO controlled both sides of the litigation in PT-2003-46, but concealed that fact from the court and beneficiaries of the Frank A. Wallace Trust, including plaintiffs until 2005.

78. Plaintiff Mary Roma Jage had no notice that TCO was the so-called "disinterested successor trustee" alluded to in Bank One's Petition until she received a copy of Plaintiff's Opening Brief, which was filed on March 15, 2004 and signed by a Jones Gotcher lawyer. This brief was the first paper filed in PT-2003-46 that mentions TCO by name. Mrs. Jage had no reason to suspect, in March 2004, that each of the statements quoted below from the "Bank One" Brief was actually written by Milton, TCO's lawyer who did not enter his appearance in the case until after the hearing where the court granted TCO and Bank One all of the relief both of these financial institutions sought:

a. *Bank One* proposes that The Trust Company of Oklahoma ("Trust Company") be named Trustee of the reformed Lisa Trust.

b. The Dad's Trust currently contains assets in the approximate amount of $2.6M. *Bank One* relies on a long-term care plan provided by an expert to support this assertion.

c. Counting . . . additional expenses [of a home and automobile] into option two (2), *Lisa would need $890,338.43 for her long-term care* and maintenance *without considering future legal fees and costs.*

As the Court is well aware, *consideration of legal fees and costs in any long-term care plan for Lisa is essential.* Ongoing family conflicts over the past four (4) years have resulted in *legal fees and costs in excess of $1,300,000.00.* While this number does not represent Lisa's direct, proportional share of the legal fees and costs, she has been and will continue to be indirectly impacted by protracted litigation among her family. As such, *it is prudent to include an allocation for these costs in Lisa's long-term plan.*

d. *Bank One* would advise the Court that the reformation of the Lisa Trust to a discretionary support trust would be the preferable option. . . . Therefore, Bank One suggests that one clear and complete document (the SNT [special needs trust]) would be favored and superior to the Order.

e. The current Successor Co-Trustees of the Lisa Trust are Lisa's three (3) siblings, Mary Roma Wallace Jage, Patricia Wallace Hastings, and Stephen P. Wallace

17

(the "Siblings"). Obviously, as remainder beneficiaries of the Lisa Trust, the Siblings, as Successor Co-Trustees of the Lisa Trust, suffer an inherent conflict-of-interest which should disqualify them from serving as Successor Co-Trustees. Therefore, *the Court should use its equitable power to remove the current Successor Co-Trustees and substitute Trust Company as Successor Trustee of the Lisa Trust.*

f.     *Bank One would suggest Trust Company act as Trustee of the reformed Lisa Trust.* Trust Company is well versed in the estates of Frank Wallace as well as involved in legal matters involving their estates. Currently, Trust Company is (1) Successor Co-Trustee of the Lorice Wallace Revocable Trust, (2) Successor Co-Trustee of the Lorice Wallace Irrevocable Trust, (3) General Partner with Ron Saffa in The Wallace Family Limited Partnership by virtue of its status as Successor Co-Trustee of the Lorice Wallace Irrevocable Trust, and (4) sole Trustee of the Lorice Wallace Life Insurance Trust. *Trust Company would obviously be an ideal choice as Trustee of the reformed Lisa Trust* based on this experience with the Wallaces' estates.

79. By colluding with TCO and securing an Order that "reformed" the Frank A. Wallace Trust which had become "irrevocable" upon Mr. Wallace's death in 1990, and which named TCO as trustee of the reformed Lisa Trust, Bank One breached its fiduciary duty to the principal and income beneficiaries of that trust, including plaintiff Mary Roma Jage.

80. The highest ranking trust officer in Bank One's Fort Worth office was aware, on/or before his teleconference with Lorice Wallace and two of her children in March 2003, that Mrs. Wallace did not want TCO involved in any way in the management of her affairs. It was during that same teleconference that Bank One's regional vice president in charge of trust matters authorized expenditure of the necessary funds to perform a forensic audit of the Lorice T. Wallace trusts, the type of audit that is done when fraud is suspected.

81. This action affects title or interests in the following described real property located in Tulsa County, Oklahoma because title to that property is purportedly held by Saffa, TCO, and/or Bank One as trustees of one or more Wallace Trusts and/or the LTW Family, Limited Partnership:

a.     Land located at the Southeast corner of 131st Street and Peoria, Jenks, Oklahoma, and legally described as:

> Government Lot 1 and the North Half of Government Lot 2 LESS the West 50 feet thereof and the Southeast Quarter of the Northwest Quarter

18

LESS the East half of the Southeast Quarter of the Northwest Quarter, Section 7, Township 17 North, Range 13 East in Tulsa County, Oklahoma; together with all appurtenances and improvements located thereon.

b. Land located at 6330 East 131st Street, Bixby, Oklahoma, and legally described as:

Part of the Northeast Quarter commencing at a point 40 feet West and 25 feet South of the Northeast Corner of Section 10, thence South 1550.25 feet, East 50 feet, South 334.79 feet, Northwest 113.62 feet, Northwest 660.00 feet, Northwest 396.00 feet, Northwest 264.00 feet, Northwest 396.00 feet, due North to the North Section Line, thence East 545.64 feet, East 294.36 feet, East 166 feet, South 500 feet, East 435 feet, North 475 feet, East 10 feet to the Point of Beginning, Section 10, Township 17 North, Range 13 East (approximately 44.81 acres).

c. Land located in Bixby, Oklahoma and described as:

A Tract of land located at the Southeast Corner of 131st and Sheridan; bounded on the North by 131st Street; on the East by the Fry Creek Drainage Channel, on the South by the Arkansas River, and to the West by a line that would be Sheridan Avenue if Sheridan Avenue continued directly South from that 131st and Sheridan intersection (approximately sixty-nine (69 +/- acres more or less).

d. Land located at the Northeast corner of 131st Street and Peoria, Jenks, Oklahoma, and legally described as:

The South Half of the Southwest Quarter; the West Half of the South-east Quarter Less the East 570 feet of the North 764 feet; the South 165 feet of Government Lot 5; the South 165 feet of the Southeast Quarter of the Northwest Quarter; the Northeast Quarter of the Southwest Quarter; and all of the Government Lot 6; all in Section 6, Township 17 North, Range 13 East of the Indian Base and Meridian; an 81% interest in the property being owned by the Lorice T. Wallace Family, Limited Partnership, and 19% being owned by the Frank A. Wallace Revocable Trust UID December 26, 1974 (approximately 255 acres).

e. Land located immediately west of the Sheridan Plaza Office Complex located at 4660 South Sheridan, and legally described as:

Part of Lot 1, Beginning 567.7 feet West of the Northeast Corner of Lot 1, thence West 409.25 feet, South 58 feet, Southeasterly 160.66 feet, East 143 feet, South 130 feet, East 192.44 feet, and North 330.20 feet to the Point of Beginning, Block 1, South Sheridan Plaza Resubdivision of Richland Addition.

## COUNT I - BREACH OF FIDUCIARY DUTY

Mary Roma Jage, individually and as mother and next friend of Vilia T. Jage, and Michael P. Jage, for their first claim for relief against defendants aver:

82. Paragraphs 1 through 81, inclusive, of Plaintiffs' Complaint are adopted and incorporated by reference.

83. TCO and Saffa, first as co-trustees and then as *former* co-trustees of the LTW Revocable and Irrevocable Trusts owed a duty of undivided loyalty to Lorice T. Wallace and plaintiffs Mary Roma Jage and Michael P. Jage, initially as contingent beneficiaries and since Mrs. Wallace's death in 2003, as principal and income beneficiaries of those trusts.

84. Saffa breached his fiduciary duty when he amended Mrs. Wallace's trusts to insert himself as a successor co-trustee without advising her to seek the independent opinion of a second lawyer and when he included terms in Amendment Number One to LTW Revocable Trust which purported to immunize TCO and himself from liability for breach of trust and, therefore is against "public policy.".

85. TCO and Saffa have repeatedly breached their fiduciary duties by engaging in conduct that gave rise to multiple "conflicts of interest," e.g., initiating litigation *against* Mrs. Wallace in PG-99-556, and *against* Mrs. Wallace and beneficiaries of the LTW Revocable and Irrevocable Trusts in PT-2000-21 and PT-2002-56; using trust assets for self-gain and to advance their respective self-interests, as well as the interests of law firms whose services have

20

been employed to carry out their "hostile takeover" of the LTW Revocable and Irrevocable

Trusts and the LTW Family, Limited Partnership.

86. Saffa and TCO breached their respective fiduciary duties when Saffa knowingly

violated express provisions of the LTW Revocable Trust which required him, even as an

alleged "co-trustee," to exercise his powers, duties, and authority "jointly" with TCO and when

TCO took no action to terminate PT-2000-21 at its inception. Instead, TCO allowed that and

related litigation to go on unabated for over six years at a cost of well over $1.5 million in legal

fees that have been disbursed from trust assets.

87. Bank One, as corporate trustee of the Frank A. Wallace Trust, owed a duty of

undivided loyalty to plaintiff Mary Roma Jage, as a beneficiary of that Trust.

88. Bank One breached its fiduciary duty when it recommended, or allowed TCO to

create the impression that it recommended, that the Frank A. Wallace Trust be "reformed" as

the Lisa Wallace Special Needs Trust and that TCO be named "trustee" of that trust.

89. Plaintiffs have been damaged as a direct result of TCO's, Saffa's, and Bank One's

repeated breach of their respective fiduciary duties.

90. Non-trustees, including defendants Wilkins, Poe, Milton, Levinson, Weger, and

Hastings, who knowingly and willfully participated in repeated breaches of trust and benefited

financially from such participation, are equally liable with TCO, Saffa, Bank One, and Chase.

WHEREFORE, plaintiffs pray for judgment against Ronald J. Saffa, Trust Company of

Oklahoma, Thomas W. Wilkins, James E. Poe, James C. Milton, Lee I. Levinson, James E.

Weger, Patricia Hastings, and Bank One and/or Chase, as follows:

(a) Plaintiffs pray judgment against defendants Ronald J. Saffa, Trust
Company of Oklahoma, Thomas R. Wilkins, James E. Poe, James C. Milton, Lee

21

I. Levinson, James E. Weger, Patricia Hastings, and Bank One and/or J.P. Morgan Chase & Co. compelling them to redress each breach of trust by the payment of money or otherwise; compelling the trustees and/or former co-trustees to account and then removing them as trustees; tracing trust property wrongfully disposed of, including but not limited to legal fees paid from trust assets, and imposing a constructive trust on that property until such property or its proceeds are recovered; and voiding purchase and sale agreements pertaining to real property described in paragraph 81, above;

(b) Plaintiffs pray judgment against those same defendants in an amount in excess of $10,000, as exemplary damages, plus interest thereon as permitted by law; and

(c) Plaintiffs pray for the costs of this action and all further and appropriate relief, including an award of reasonable attorneys' fees.

## COUNT II - FRAUD AND COLLUSION

Mary Roma Jage, individually and as mother and next friend of Vilia T. Jage, and Michael P. Jage, for their second claim for relief against defendants aver:

91. Paragraphs 1 through 90, inclusive, of Plaintiffs' Complaint are adopted and incorporated by reference.

92. Trustees and former trustees who claim to serve in that capacity have a duty to disclose relevant information to the *cestui que trust* and trust beneficiaries that has not been previously furnished to those individuals.

93. Saffa, Wilkins, TCO, Milton, Poe, and Levinson concealed the fact from Lorice T. Wallace and beneficiaries of the LTW Revocable Trust, the LTW Irrevocable Trust, and the LTW Family, Limited Partnership that PT-2000-21 was a "nullity" from its inception because the Petition in that case was filed by Saffa, acting independently, *not* by Saffa and TCO "jointly." Active concealment of that fact facilitated four years of litigation in PT-2002-56, a case that is based on fraudulently-procured findings in the Judgment in PT-2000-21.

22

94. Saffa and Milton made false representations of law and fact to plaintiff Mary Roma Jage in connection with their securing her signature on the agreed Order in PG-99-556, by telling her, when she was not represented by counsel, that she would not be appointed limited guardian of her mother unless she signed a document that rendered "void" any instruments her mother had executed between December 13, 1999, and May 9, 2000, that pertained to any of her trusts.

95. Barker and Kellough concealed information they had a duty to disclose to prevent the perpetration of fraud, including but not limited to Barker's failure to disclose information contained in his May 4, 2000 letter to Milton to Mrs. Wallace and plaintiff Mary Roma Jage and the fact that he was no longer representing the best interests of his client but was concerned about the legal fees owed his firm, and Kellough's failure to disclose actions he purportedly took on behalf of Mrs. Wallace and plaintiff Mary Roma Jage without their knowledge or consent, actions that were designed to benefit TCO, not Mrs. Wallage or Ms. Jage.

96. Bank One, acting by and through Weger, concealed the fact from plaintiffs Mary Roma Jage and Michael P. Jage that TCO, rather than Bank One, prepared Plaintiff's Opening Brief in PT-2003-46 to create the false impression that the statement that "Trust Company would obviously be an ideal choice as Trustee of the reformed Lisa Trust" constituted an objectively-based assessment of TCO's qualifications to serve in that capacity, not a statement made by TCO to further its own financial and other interests.

97. Plaintiff Mary Roma Jage relied on the misrepresentations made by Milton and Saffa on May 9, 2000.

98. Plaintiffs have been damaged by Milton's and Saffa's misrepresentations and by

TCO's, Saffa's, Barker's, Kellough's, Weger's, and Bank One's and/or Chase's failure to

disclose information they and their attorneys had an affirmative duty to disclose in order to

prevent the perpetration of fraud.

WHEREFORE, plaintiffs pray for judgment against Ronald J. Saffa, Trust Company of

Oklahoma, Bank One, N.A. and/or J.P. Morgan Chase & Co., Thomas W. Wilkins, James E.

Poe, James C. Milton, Lee I. Levinson, and James E. Weger, as follows:

> (a) Plaintiffs pray judgment against defendants Ronald J. Saffa, Trust Company of Oklahoma, Bank One, N.A. and/or J.P. Morgan Chase & Co., Thomas R. Wilkins, James E. Poe, James C. Milton, Lee I. Levinson, and James E. Weger in an amount in excess of $10,000 as damages for their fraud and collusion;

> (b) Plaintiffs pray judgment against those same defendants in an amount in excess of $10,000, as exemplary damages, plus interest thereon as permitted by law; and

> (c) Plaintiffs pray for the costs of this action and all further and appropriate relief, including an award of reasonable attorneys' fees.

## COUNT III - NEGLIGENT SUPERVISION

Mary Roma Jage, individually and as mother and next friend of Vilia T. Jage, and

Michael P. Jage, for their first claim for relief against defendants Doerner, Saunders, Daniel

and Anderson, L.L.P.; Morrel, West, Saffa, Craige & Hicks, Inc.; Covington & Poe; Pezold,

Caruso, Barker & Woltz; Boone, Smith, Hurst & Dickman; Boone, Smith, Hurst & Dickman,

Inc.; Jones, Givens, Gotcher & Bogan; and Jones, Gotcher & Bogan, aver:

99. Paragraphs 1 through 98, inclusive, of Plaintiffs' Complaint are adopted and incorporated by reference.

100. In all of the actions and matters averred herein, Milton was subject to the supervision and control of Doerner Saunders.

101. In all of the actions and matters averred herein, Saffa was subject to the supervision and control of Morrel, West, Saffa, Craige & Hicks, Inc.

102. In all of the actions and matters averred herein, Poe was subject to the supervision and control of Covington & Poe.

103. In all of the actions and matters averred herein, Barker was subject to the supervision of Pezold Caruso, Barker & Woltz.

104. In all of the actions and matters averred herein, Kellough was subject to the supervision and control of Boone, Smith, Hurst & Dickman and Boone, Smith, Hurst & Dickman, Inc.

105. In all of the actions and matters averred herein, Weger was subject to the supervision and control of Jones, Givens, Gotcher & Bogan and Jones, Gotcher & Bogan..

106. The knowledge of facts of each attorney who is identified above relating to their respective law firms, including their making material misrepresentations of law and/or concealing information they had an affirmative duty to disclose, is imputed to their respective law firms, as a matter of Oklahoma law.

107. Doerner, Saunders, Daniel & Anderson, L.L.P. was negligent in its supervision of Milton.

108. Covington & Poe was negligent in its supervision of Poe.

109. Morrel, West, Saffa, Craige & Hicks, Inc. was negligent in its supervision of Saffa.

110. Pezold, Caruso, Barker & Woltz was negligent in its supervision of Barker.

25

111. Boone, Smith, Davis, Hurst & Dickman and Boone, Smith, Davis, Hurst &

Dickman, Inc. were negligent in its supervision of Kellough.

112. Jones, Givens, Gotcher & Bogan and Jones, Gotcher and Bogan were negligent

in their supervision of Weger.

WHEREFORE, plaintiffs pray for judgment against Doerner, Saunders Daniel &

Anderson, L.L.P.; Covington and Poe; Morrel, West, Saffa, Craige & Hicks, Inc.; Pezold,

Caruso, Barker & Woltz; Boone, Smith, Davis, Hurst & Dickman; Boone, Smith, Davis, Hurst

& Dickman, Inc.; Jones, Givens, Gotcher & Bogan; and Jones, Gotcher & Bogan, as follows:

(a) Plaintiffs pray judgment against Doerner, Saunders, Daniel &
Anderson, L.L.P.; Covington & Poe; Morrel, West, Saffa, Craige & Hicks, Inc.;
Pezold, Caruso, Barker & Woltz; Boone, Smith, Davis, Hurst & Dickman;
Boone, Smith, Davis, Hurst & Dickman, Inc.; Jones, Given, Gotcher & Bogan;
and Jones, Gotcher & Bogan and all partners of those firms, except the defendant
lawyers and those admitted as partners into existing partnerships after the
respective liabilities of those partnerships were incurred, jointly and severally,
in an amount in excess of $10,000, as actual damages for negligent supervision,
plus interest thereon as permitted by law;

(b) Plaintiffs pray judgment against the same defendant law firms and all
partners of those firms, except the defendant lawyers and those admitted as
partners into existing partnerships after the respective liabilities of those partner-
ships were incurred, jointly and severally, in an amount in excess of $10,000, as
exemplary damages, plus interest thereon as permitted by law.

(c) Plaintiffs pray for the costs of this action, and all further and appro-
priate relief.

## COUNT IV - ATTORNEY DECEIT AND COLLUSION

Mary Roma Jage, individually and as mother and next friend of Vilia T. Jage, and

Michael P. Jage, for their third claim for relief against defendants Ronald J. Saffa, James C.

Milton, and James E. Poe, aver:

113. Paragraphs 4, 6, 8, 9, 21, 25, 27, 28, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 44, 45, 46, 47, 48, 49, 51, 54, 55, 56, 57, 58, 59, 60, 61, 63, 64, 65, 67, 68, 69, 72, 73, 76, 78, 81, 83, 84, 85, 90, 93, 94, 95, 96, and 98 of Plaintiffs' Complaint are adopted and incorporated by reference.

114. Milton, Poe, and Saffa engaged in a chronic, extreme pattern of legal delinquency by engaging in the conduct described in the paragraphs incorporated by reference in the paragraph 113. By engaging in such conduct, with intent to deceive the District Court of Tulsa County, Milton, Poe, and Saffa violated the Oklahoma Attorney Deceit Statute, 21 Okla.Sta. § 575, and are guilty of deceit and collusion.

115. Plaintiff have been injured by repeated violations of the Oklahoma Attorney Deceit Statute that are alleged in this Complaint.

116. Milton, Poe, and Saffa are liable to plaintiffs for treble damages under 21 Okla. Stat. § 575.

WHEREFORE, plaintiffs pray for judgment against James C. Milton, James E. Poe, and Ronald J. Saffa as follows:

(a) Plaintiffs pray judgment against defendants James C. Milton, James E. Poe, and Ronald J. Saffa in an amount in excess of $10,000 as treble damages under 21 Okla.Stat. § 575, plus interest thereon as permitted by law.

(b) Plaintiffs pray for the costs of this action and all further and appropriate relief, including an award of reasonable attorneys' fees.

## JURY TRIAL DEMAND

Plaintiffs Mary Roma Jage and Michael P. Jage respectfully request that all issues herein

properly triable by jury be so tried.

Respectfully submitted,

Joan Godlove, Oklahoma Bar Ass'n No. 10563
2121 S. Columbia, Suite 500
Tulsa, Oklahoma 74114-3519
Telephone: (918) 744-0201

Attorney for Plaintiffs Mary Roma Jage and
Michael P. Jage

**ATTORNEYS' LIEN CLAIMED**

28