IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY ROMA JAGE, individually and as mother and next friend of Vilia T. Jage, and MICHAEL P. JAGE, <br><br> Plaintiffs, <br><br> vs. <br><br> TRUST COMPANY OF OKLAHOMA et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 06-CV-249-GKF-FHM |

## OPINION AND ORDER

This matter is before the court on Defendants' various motions to dismiss [Dkt. Nos. 26, 36, 37, and 40]. For the reasons set forth in this opinion, Defendants' motions are granted.

### I. Background

This matter arises from the alleged wrongful conduct of the various defendants named in this case. Plaintiffs allege that they were injured by the Defendants' conduct in connection with a number of trusts created by Lorice T. Wallace and Frank A. Wallace. Plaintiffs brought this action alleging that they were injured by the misconduct of the individual defendants.[1]

**A. Facts Alleged in Plaintiffs' Amended and Supplemental Complaint**

Mary Roma Jage is the second of four children of Lorice T. Wallace and Frank A. Wallace. During their lifetimes, Lorice and Frank Wallace established a number of trusts ("the

---

[1] Plaintiffs filed an "Amended and Supplemental Complaint" on November 10, 2006. On December 2, 2008, this court granted in part and denied in part the Defendants' Motion to Strike the Amended and Supplemental Complaint. *See* Dkt. No. 157. For purposes of this order, "Complaint" refers to the Amended and Supplemental Complaint as modified by this court's December 2, 2008 order.

1

Wallace Trusts"),[2] the administration of which is at issue in this case. Ms. Jage and her siblings were named as beneficiaries of the Wallace Trusts.

Plaintiffs allege that defendant Ronald J. Saffa, Lorice Wallace's nephew, made misrepresentations and self-serving recommendations to Lorice Wallace while acting as her tax attorney. As a result, although Lorice Wallace did not intend or desire to alter the Wallace Trusts in any way, she nevertheless relied on Mr. Saffa's misrepresentations and recommendations and signed the following documents: (1) a 1993 restatement of the LTWR Trust, naming Mr. Saffa and the Trust Company of Oklahoma ("TCO") as successor co-trustees; (2) a 1998 amendment to the LTWR Trust; (3) an instrument creating the LTWLI Trust, which named TCO and Mr. Saffa as co-trustees; (4) a 1996 trust indenture creating the LTWI Trust and naming TCO as sole trustee; (5) The Lorice T. Wallace Family Limited Partnership Agreement; and (6) a 1998 letter prepared by defendant Paul H. Mindleman, President of TCO, which listed the conditions that Lorice Wallace was required to agree to before TCO would agree to act as successor co-trustee of the LTWR and LTWI Trusts.

In November of 1999, Lorice Wallace resigned as trustee of the LTWR Trust.[3] On December 9, 1999, Lorice Wallace executed a Durable Power of Attorney, which nominated Stephen P. Wallace to be the guardian or conservator of Lorice Wallace's person and estate in the event that protective proceedings for Lorice Wallace's person or estate were commenced.

---

[2] The Wallace Trusts include the Frank A. Wallace Trust, the Lisa Frances Wallace Trust, the Lorice T. Wallace Revocable Trust ("LTWR Trust"), the Lorice T. Wallace Life Insurance Trust ("LTWLI Trust") and the Lorice T. Wallace Irrevocable Trust ("LTWI Trust").

[3] Plaintiffs claim that Mr. Saffa and defendant Patricia Wallace Hastings pressured Lorice Wallace into resigning.

Four days later, defendants James E. Poe and Lee I. Levinson initiated a guardianship proceeding in Tulsa County District Court, seeking to appoint Patricia Wallace Hastings, Lorice Wallace's daughter, as guardian of Lorice Wallace (Case No. PG-99-556).[4]

On March 13, 2000, Lorice Wallace executed an amendment altering the LTWR Trust (the "Instrument Altering Trust"), removing Mr. Saffa and TCO as trustees and inserting Ms. Jage, Stephen Wallace and defendant Bank One, N.A., as successor co-trustees. On March 23, 2000, a copy of the Instrument Altering Trust was faxed to Mr. Saffa and defendant Thomas W. Wilkins, who was then acting as TCO's President and CEO. The next day, Mr. Poe and Mr. Levinson filed a petition in Tulsa County District Court for instructions and construction of the trust (Case No. PT-2000-21). Although Mr. Poe and Mr. Levinson claimed to be acting as "Attorneys for Trustees," Plaintiffs maintain that only Mr. Saffa, and not TCO, had authorized the litigation; therefore, the Plaintiffs assert, the filing of the petition was "a nullity" because TCO did not join Mr. Saffa in authorizing the lawsuits and because, in any event, TCO and Mr. Saffa had been removed as trustees. Plaintiffs assert that Mr. Saffa, TCO, Mr. Milton and Mr. Poe actively concealed from Ms. Jage and Lorice Wallace information pertaining to TCO's failure to authorize the lawsuit.

On May 9, 2000, the state probate court entered an order in Case No. PG-99-556, which included, among other things, a provision stating that any and all documents executed by Lorice Wallace between December 13, 1999 and May 9, 2000 pertaining to or modifying Lorice Wallace's trust documents were revoked, null and void. This provision had the effect of

---

[4] Plaintiffs claim that Mr. Saffa has acknowledged that he and TCO were the driving force behind the proceeding.

revoking or nullifying the Instrument Altering Trust, which removed Mr. Saffa and TCO as trustees. Although Ms. Jage signed the agreed-upon order, the Plaintiffs claim she only did so because Mr. Saffa and Mr. Milton told her that, unless she signed the document, she would not be appointed limited guardian of the person of Lorice Wallace. In addition, Plaintiffs claim that a letter from defendant Terry J. Barker to Mr. Milton indicates that Mr. Milton drafted the order[5].

On March 21, 2002, the state district court entered a Journal Entry of Final Judgment in Case No. PT-2000-21, declaring Mr. Saffa and TCO to be the trustees of all trusts, and declaring certain documents to be null, void and without force or effect, in accordance with the order entered in Case No. PG-99-556. Plaintiffs maintain that the judgment entered in Case No. PT-2000-21 is without effect because (1) the Tulsa County District Court lacked subject matter jurisdiction over the case because TCO did not join Mr. Saffa in authorizing the lawsuits and because TCO and Mr. Saffa had been removed as trustees, and (2) the judgment was based on the fraudulently-obtained order in Case No. PG-99-556.

In April 2000, Lorice Wallace filed a petition against TCO and Mr. Saffa in Tulsa County District Court, Case No. CJ-2000-1684. She also filed a writ proceeding in the Oklahoma Supreme Court, which sought to enjoin a Tulsa County District Court judge from taking further actions in the guardianship proceeding. After the writ was filed, however, an attorney from defendant law firm Pezold, Caruso, Barker & Woltz, the firm representing Lorice Wallace, moved for voluntary dismissal of the action because the dispute had been resolved by the order issued on May 9, 2000.

---

[5] In the letter, Mr. Barker allegedly suggested that Mr. Milton insert language revoking any Durable Powers of Attorney executed by Lorice Wallace and authorizing TCO to pay Pezold, Caruso, Baker & Woltz for legal fees incurred while representing Lorice Wallace.

Lorice Wallace passed away in mid-2003. In September of that year, Defendant James E. Weger filed a petition for guidance and construction of trust in Tulsa County District Court on behalf of his client, defendant Bank One, N.A. (Case No. PT-2003-46). The petition sought the following relief: (1) guidance and a determination concerning the distribution of proceeds of the Frank A. Wallace Trust; (2) a determination of how a trust for the benefit of Lisa Frances Wallace, Lorice Wallace's daughter, ("the Lisa Trust") should be reformed or interpreted; and (3) a determination of whether the successor trustees of the Lisa Trust–Stephen Wallace, Ms. Jage and Ms. Hastings–were conflicted from serving as trustees, and, if so, a determination of a successor trustee. Plaintiffs assert that, although the petition was nominally brought by Bank One, both sides of the action were, in fact, controlled by TCO. Plaintiffs claim that TCO colluded with Bank One to insert itself as trustee and to relieve Bank One of any liability it might incur if it were to resign as trustee. Plaintiffs were unaware that TCO was the "disinterested trustee" referred to in Bank One's petition until March 15, 2004, when a brief filed in Case No. PT-2003-46 proposed that TCO be named trustee of the Lisa Trust. Plaintiffs maintain that Bank One knew that Lorice Wallace did not want TCO involved in the management of her affairs; they further claim that Bank One breached its fiduciary duty by colluding with TCO to reform the Lisa Trust and to affect the distribution of proceeds of the Frank A. Wallace Trust.

Plaintiffs assert that, on three occasions, defendant William C. Kellough, an attorney with Boone, Smith, Davis, Hurst & Dickman, filed papers in trust-related proceedings stating that Lorice Wallace and Ms. Jage stipulated that TCO and Mr. Saffa could continue as trustees and that no hearing was necessary to adjudicate the sufficiency of their accounting. Ms. Jage asserts

that she neither knew of nor consented to these filings.

**B.     Legal Claims Set forth in Plaintiffs' Amended and Supplemental Complaint**

   1.     Count I: Breach of Fiduciary Duties

Plaintiffs assert that Mr. Saffa breached his fiduciary duties to Lorice Wallace and Ms. Jage by (1) amending various trust documents so that he would be named as a trustee without advising Lorice Wallace to seek the opinion of outside counsel, and (2) by drafting the 1998 amendment to the LTWR Trust. They further claim that Mr. Saffa and TCO breached their fiduciary duties by initiating litigation against Lorice Wallace, by using trust assets for self-gain, and by filing Case No. PT-2000-21 and permitting that case to proceed even though TCO did not join Mr. Saffa in filing the action.

Plaintiffs also contend that Bank One breached its duty to Ms. Jage and Michael Jage when it colluded with TCO to reform the Lisa Trust and to affect the distribution of proceeds of the Frank A. Wallace Trust.

Plaintiffs claim that Mr. Barker breached his duty of loyalty to Lorice Wallace–as well as to Ms. Jage, as Lorice Wallace's guardian–by making certain suggestions in his May 4, 2000 letter to Mr. Milton, by signing the agreed orders in Case Nos. PG-99-556 and PT-2000-21, by directing the dismissal of the proceedings before the Oklahoma Supreme Court, and by failing to inform Ms. Jage, Lorice Wallace and the Tulsa County District Court of information relevant to court proceedings.

Plaintiffs assert that Mr. Kellough breached his duty of loyalty to Lorice Wallace and Ms. Jage by filing documents stipulating to Mr. Saffa's and TCO's status as trustees without Ms. Jage's knowledge or consent.

Plaintiffs ask this court (1) to compel the Defendants to redress each breach by paying money damages, (2) to compel the trustees to account, (3) to order the removal of the trustees, (4) to determine wrongfully-disposed of trust property and to impose a constructive trust on that property, (5) to void purchase or sale agreements pertaining to real property held by trustees, and (6) to order damages, costs, and other relief, including attorneys' fees.

### 2. Count 2: Fraud and Collusion

Plaintiffs allege that Mr. Saffa, TCO, Mr. Wilkins, Mr. Milton, Mr. Poe and Mr. Levinson concealed from Ms. Jage the fact that Case No. PT-2000-21 was "a nullity" because TCO did not join in the filing of that action. Plaintiffs further claim that Mr. Milton and Mr. Saffa falsely represented to Ms. Jage that she would not be appointed guardian of the person of her mother unless she signed the order entered in Case No. PG-99-556.

Plaintiffs claim that Mr. Barker failed to disclose to Ms. Jage information contained in his May 4, 2000 letter to Mr. Milton, which would have revealed that he was not acting in the best interest of his clients. Likewise, Plaintiffs claim that Mr. Kellough failed to disclose to Ms. Jage or Lorice Wallace that he took certain actions designed to benefit TCO without the consent or knowledge of either Lorice Wallace or Ms. Jage.

Plaintiffs assert that Bank One, acting by and through Mr. Weger, concealed the fact that it had colluded with TCO in the proceedings before the Tulsa County District Court in Case No. PT-2003-46.

With respect to Count 2, Plaintiffs seek damages, exemplary damages, costs and any other appropriate relief, including attorneys' fees.

3. <u>Count 3: Negligent Supervision</u>

With respect to Count 3, Plaintiffs make the following assertions: (1) Doerner, Saunders, Daniel & Anderson, LLP, was negligent in its supervision of Mr. Milton; (2) Morrel, West, Saffa, Craige & Hicks was negligent in its supervision of Mr. Saffa; (3) Pezold, Caruso, Barker & Woltz was negligent in its supervision of Mr. Barker; (4) Boone, Smith, Hurst & Dickman and Boone, Smith, Hurst & Dickman, Inc. were negligent in their supervision of Mr. Kellough; and (5) Jones, Givens, Gotcher & Bogan and Jones, Gotcher & Bogan were negligent in their supervision of Mr. Weger.  Plaintiffs ask this court for an award of damages, exemplary damages, costs and other relief against each of the named entities.

4. <u>Count 4: Attorney Deceit and Collusion</u>

Plaintiffs assert that Mr. Milton, Mr. Poe and Mr. Saffa engaged in collusive conduct with the intent to deceive the Tulsa County District Court.  Plaintiffs assert that Mr. Milton, Mr. Poe and Mr. Saffa therefore violated the Oklahoma Attorney Deceit Statute, 21 Okla. Stat. § 575, and that the named defendants' actions harmed the Plaintiffs.  Plaintiffs seek treble damages under 21 Okla. Stat § 575, an award of costs and other relief.

## II. Discussion

**A.   This court lacks subject matter jurisdiction over this in rem action because the state court is actively exercising jurisdiction over the res of the trusts at issue**.

Given the claims at issue in this case and the nature of the relief sought by the Plaintiffs, this court concludes that it is without jurisdiction to rule on the merits of the Plaintiffs' claims. Currently, there are two sets of proceedings pertaining to the Wallace Trusts: the proceedings

over which the Tulsa County District Court has retained jurisdiction[6] and the proceedings in this action.  In cases where two related actions are proceeding in two separate courts, and "the two suits are in rem, or quasi in rem, so that the court . . . has possession or must have control of the property . . . in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other."  *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939); *see also Marshall v. Marshall*, 547 U.S. 293, 311 (2006) (recognizing "the general principle that, when one court is exercising in rem jurisdiction over a res, a second court will not assume in rem jurisdiction over the same res" (italics omitted)).  This rule applies not only in cases where the property has been actually seized before the initiation of the second suit, but also in cases where "suits are brought to . . . administer trusts . . . and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property."  *Princess Lida*, 305 U.S. at 466.  The Tenth Circuit has noted, however, that not every case that touches on matters relating to the administration of a trust will be considered in rem; courts must examine "the nature of the federal action" to determine whether the federal action may proceed "without interfering with the state suit or with the res of the trust."  *Sw. Bank & Trust Co. of Okla. City v.*

---

[6] As the cases discussed in the Plaintiffs' Complaint demonstrate, the Tulsa County District Court assumed jurisdiction over the res at issue in this case prior to the initiation of the instant action.  In addition, the Oklahoma state courts have retained jurisdiction over the res, *see*, *e.g.,* Dkt. No. 40, Ex. 28 at 4 (Final Order as to Certain Issues, *In re Franklin A. Wallace Revocable Trust*, Case No. PT-2003-46, District Court of Oklahoma, Tulsa County) ("the Court retains jurisdiction to address any issues regarding the administration of the Lisa Frances Wallace Supplemental Needs Trust as administered by The Trust Company of Oklahoma") and the state courts have continued to hear and adjudicate matters relating to the Wallace Trusts in the months following the Plaintiffs' filing of their original complaint.

*Metcalf State Bank*, 525 F.2d 140, 142 (10th Cir. 1975).[7] Accordingly, because the Tulsa County District Court exercises in rem jurisdiction over the res of the trusts, this court must yield its jurisdiction over any action that would interfere with state-court jurisdiction.

The nature of the claims in this case are either in rem or quasi in rem. "Under both Oklahoma law and the law of this Circuit, a suit that concerns or determines the ownership, control and administration of a trust and the powers, duties and liabilities of the trustee is either in rem or quasi in rem." *Cassity v. Pitts*, 995 F.2d 1009, 1012 (10th Cir. 1993) (italics removed) (citing Okla. Stat. tit. 60, § 175.23(A) and *Buck v. Hales*, 536 F.2d 1330, 1332 (10th Cir. 1976)). Both the control and administration of the Wallace Trusts and the duties and liabilities of the trustees are at issue here: many of the Plaintiffs' claims seek either a direct determination of the obligations of the trustees or an interpretation of the trusts and other documents.[8] *See id.* (concluding that the federal district court lacked jurisdiction over the action, which raised both RICO and state fraud claims, because the relief requested would require the court to define the duties and responsibilities of the trustees and to interpret the trust and settlement agreement).[9] Furthermore, in order to adjudicate those claims that do not require an interpretation of the trusts

---

[7] *Cf. Marshall v. Marshall*, 547 U.S. 293, 311-23 (2006) (noting that the rule that prevents federal courts from "endeavoring to dispose of property that is in the custody of a state probate court . . . . does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction," and permitting a tort claim to proceed where the plaintiff did not seek to reach the res in the custody of a state court).

[8] For example, in Count 2, Plaintiffs ask this court to determine, among other things, whether Mr. Saffa and TCO were obligated to dismiss Case No. PT-2000-21.

[9] *See also Buck v. Hales*, 536 F.2d 1330 (10th Cir. 1976) (per curiam) (affirming the dismissal of the federal case where the appellant's complaint of mismanagement would involve both "a determination of the propriety of the cotrustees' action" and a "construction by the lower court of the terms of the trust instrument itself").

or a determination of the trustees' obligations, this court would be required to pass upon the validity of a number of orders, judgments and court filings;[10] to rule on such matters could call into question both the identity of the trustees and the effect of certain instruments pertaining to the ownership and control of the trust.

In addition, the Plaintiffs ask this court for relief that, if granted, would interfere with the state court's possession of the res of the trusts. Specifically, Plaintiffs have asked this court to order an accounting, to remove certain trustees, to impose a constructive trust on certain property and to void purchase or sale agreements pertaining to real property held by the trustees. To grant such relief would interfere with the state court's ability to control or dispose of the property at issue in this case. *See Princess Lida*, 305 U.S. at 465, 467 (concluding that the district court was without jurisdiction over the lawsuit, which charged the trustees with mismanagement and sought an order requiring the filing of an account, removal of the trustees and other general relief); *Cassity*, 995 F.2d 1009 (determining that the federal action was in rem where the beneficiaries sought damages that would have been measured by "'what they should have received from the [trust] had the trustees honestly administered it'") (alteration in original)).[11]

Given the issues presented in this case and the nature of the relief sought, this court

---

[10] In order to assess the claims brought by the Plaintiffs, this court would be required to determine, inter alia, whether the orders entered in Case Nos. PG-99-556 and PT-2000-21 should have been signed by certain party representatives, whether the order entered in PT-2000-21 was "a nullity," and whether certain rulings, documents and filings were the product of collusion, coercion and artifice.

[11] *Cf. Sw. Bank & Trust Co. of Okla. City v. Metcalf State Bank*, 525 F.2d 140, 142-43 (10th Cir. 1975) (classifying the federal action, which involved claims related to the administration of the trust and sought only money damages against the trustee, as in personam, and stating that the case on appeal "was of an entirely different nature" than a prior case where the relief sought included removal of the trustee and construction of the will creating the trust).

concludes that this federal action is in rem or quasi in rem in nature. By ruling on the issues presented or granting the relief requested, this court would impermissibly interfere with the state court's jurisdiction over the res of the various trusts. Accordingly, this court must yield its jurisdiction over this case. *See Cassity*, 995 F.2d at 1012 (concluding that the district court lacked subject matter jurisdiction over the in rem action where the state court assumed jurisdiction prior to the commencement of the federal action and continued to exercise jurisdiction at the time the federal suit was commenced).

**B.     This court lacks subject matter jurisdiction over portions of this action pursuant to the *Rooker-Feldman* doctrine.**

Even if the *Princess Lida* doctrine were inapplicable in this case, portions of the Plaintiffs' claims would nevertheless be barred by the *Rooker-Feldman* doctrine.[12] "The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curiam) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine also prevents district courts from passing on claims that, although not directly adjudicated by the state court, are "'inextricably intertwined' with the state court's judgment." *Mann v. Boatwright*, 477 F.3d 1140, 1147 (10th Cir. 2007) (quoting *Exxon-Mobil Corp.*, 544 U.S. at 286 n.1); *see Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006).

In this case, Plaintiffs do not directly challenge any rulings or orders entered by the Oklahoma state courts. Instead, Plaintiffs seek damages from individual defendants based on

---

[12] *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of App. v. Feldman*, 460 U.S. 462 (1983).

12

their actions in the state-court proceedings. Portions of Plaintiffs' claims depend upon this court's determination of (1) whether PT-2000-21 was, as Plaintiffs claim, "a nullity," and (2) whether the order entered in Case No. PG-99-556 was fraudulently obtained. Thus, this court could not adjudicate the claims against the individual defendants without reviewing, and rejecting, the judgments entered in Case Nos. PT-2000-21 and PG-99-556.[13] Those claims are, therefore, inextricably intertwined with those state-court judgments. *See Mann*, 477 F.3d at 1147 (concluding that the plaintiff's claims for monetary damages against the individual defendants were inextricably intertwined with the state-court judgment where the district court could not rule on her claims without reviewing and rejecting the state court's judgments).

Although the Plaintiffs were not necessarily the "state-court losers" in the judgments entered in Case Nos. PT-2000-21 and PG-99-556,[14] Plaintiffs now assert that they were damaged by the actions taken by the Defendants in procuring those judgments. Thus, Plaintiffs' claims against the Defendants–which include claims for damages for breach of fiduciary duty, fraud, negligent supervision and attorney deceit and collusion–are not unlike those brought by the

---

[13] Recently, the scope of the *Rooker-Feldman* doctrine has been clarified. Federal jurisdiction will not be barred if the federal suit was filed "before the end of the state courts' appeal process." *Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006) (citation and quotation marks omitted). The Tenth Circuit has sated that, "if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended" and "*Rooker-Feldman* applies as to that judgment and any claims inextricably intertwined with it." *Bear v. Patton*, 451 F.3d 639, 642 (10th Cir. 2006). The final order entered in PT-2000-21 on March 25, 2002 was not appealed, and the time to file an appeal expired before this case was filed. The final order entered in PG-99-556 was entered on May 9, 2000; it was appealed by Stephen P. Wallace, who exhausted his appellate remedies. The time to appeal that order expired prior to the filing of this action.

[14] As mentioned earlier, Ms. Jage originally signed the consent order entered in PG-99-556. In fact, Ms. Jage successfully defended against Stephen Wallace's appeal of the guardianship order.

plaintiff in *LeCates v. Barker*, No. 00-4026, 2000 WL 1717184 (10th Cir. Nov. 16, 2000) (unpublished).[15] In *LeCates*, the plaintiff believed that a default judgment entered in state court had been obtained by fraud. Rather than filing a state-court motion to have the judgment set aside, the plaintiff filed suit in federal district court, seeking damages for, among other things, fraud, abuse of process and attorney deceit and collusion. *See id.* at *2. The Court of Appeals for the Tenth Circuit concluded that, in order to grant relief on either the fraud claim or the attorney deceit and collusion claim, the court would first be required to determine that the state-court judgment was fraudulently obtained, thereby "calling into question the validity of the default judgment." *Id.* Accordingly, the court concluded that those two claims were barred by the *Rooker-Feldman* doctrine because they were "inextricably intertwined" with the merits of the state-court judgment.

This court is persuaded that the reasoning applied in *LeCates* is equally applicable here. Plaintiffs believe that certain state-court judgments were obtained by fraud and collusion; rather than seeking to have those judgments set aside, they now ask this court to award damages and other relief based on the Defendants' conduct in those actions. This court lacks jurisdiction to do so. This court cannot rule on Plaintiffs' claims for damages without passing on the validity of the state-court judgments in PT-2000-21 and PG-99-556, and Plaintiffs' claims related thereto are, therefore, inextricably intertwined with those final judgments.

---

[15] Although *LeCates* is an unpublished case, it has persuasive value. *See United States v. Melton*, 131 F.3d 1400, 1401 n.4 (10th Cir. 1997) (citing 10th Cir. R. 36.3).

## III.  Conclusion

For the reasons set forth in this opinion, this court lacks jurisdiction to adjudicate Plaintiffs' claims.  Accordingly, the Defendants' motions to dismiss [Dkt. Nos. 26, 36, 37, and 40] are granted.

IT IS SO ORDERED this 30th day of September, 2009.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma